## IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MICHAEL ANTHONY FALCO,** | ) | **Case No. 10-20590-drd7** |
| Debtor. | ) | |
| | ) | |
| **PREMIER BANK** | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary No. 10-2019** |
| | ) | |
| vs. | ) | |
| | ) | |
| **MICHAEL ANTHONY FALCO,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This adversary comes before the Court on the Complaint filed by plaintiff Premier Bank ("Premier") against Michael Anthony Falco ("Defendant" or "Debtor"). Premier argues that the entire debt owed to it by Debtor should be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[1] Debtor made a claim for attorney's fees under 11 U.S.C. § 523(d), which Premier opposes. Debtor argues that Premier has failed to establish all of the elements of § 523(a)(2)(A), and even if it has, the damages should be limited to those specifically resulting from Debtor's alleged fraudulent conduct. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. §§ 157(b)(2)(I). This Memorandum Opinion contains my Findings of Fact and Conclusions of Law

---

[1] Premier withdrew and/or abandoned its claims under 11 U.S.C. §§ 523 (a)(6)(A)*[sic]*, (c)(1) and 11 U.S.C. §§ 727 (a)(4)(A) and (a)(4)(c). Premier's claim under 11 U.S.C. § 523(a)(2)(B) was denied by the Court's granting of Debtor's motion for directed verdict after the close of evidence.

pursuant to Rule 52 of the Federal Rules of Civil Procedure as made applicable to this matter by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For all the reasons set forth below, the Court finds that Premier failed to produce evidence of damages under §523(a)(2)(A) and that Debtor's debt owed to Premier in the amount of $131,538.87 will be discharged. The Court also finds that Debtor failed to prove entitlement to attorney's fees under §523(d), therefore, Debtor's request for attorney's fees under that section is denied.

## I. FACTUAL BACKGROUND

On or about May 5, 2006, Debtor executed and delivered a promissory note to Premier in the principal amount of $152,000 ("Note"). As security for the Note, Debtor pledged his 2002 Cadillac Escalade, a deed of trust on his parents' residence in Columbia, Missouri, and the value of an insurance policy that he holds from Farmers Insurance Company. The Note matured on May 10, 2009 and a balloon payment was due on that date. Debtor failed to make the required balloon payment and Premier initiated foreclosure proceedings on Debtor's parents' home. Around the same time that the foreclosure proceedings had started, Debtor and Premier were engaged in negotiating renewal terms for the Note. As part of the negotiations, which took place from June 2009 through January 2010, Debtor's primary goal was to have Premier release the deed of trust on his parents' residence and Premier's goal was to have Debtor assume responsibility on the Note and, if it were to release the deed of trust, it wanted Debtor to pledge additional collateral. Ultimately the parties agreed to renew the Note pursuant to the following conditions: (1) Debtor would pay $25,000 toward the principal on the Note (an amount which represented $9,000 for the release of Premier's lien on Debtor's 2002 Escalade and $16,000 for

the release of the deed of trust on Debtor's parents' residence)[2]; (2) Debtor would pledge his life insurance policy which had a face value of $150,000; (3) Debtor would execute a second deed of trust on his personal residence in favor of Premier; and (4) Debtor would, again, execute an assignment of his Farmers Insurance Company Contract to Premier. Debtor fulfilled his obligations and Premier released the deed of trust on Debtor's parents' residence and the lien on the Escalade.

On or about February 4, 2010, Debtor executed a new promissory note, security agreement and truth-in-lending disclosure agreement ("2010 Note"). Under the 2010 Note, Debtor agreed to repay the total amount of $131,538.87 (an amount which reflects the $25,000 payment by Debtor to release the deed of trust and the lien), plus all other amounts due under the terms of the 2010 Note. Debtor did not disclose to Premier at this time, or at any time prior to filing his Chapter 7 petition, that he had met with Harry D. Boul and Boul & Associates or that he was contemplating filing for bankruptcy. Debtor filed for relief under Chapter 7 of the Bankruptcy Code on March 7, 2010.

The crux of Premier's § 523(a)(2)(A) claim is that Debtor intentionally concealed the fact that he was contemplating bankruptcy, and strategically waited to file his bankruptcy petition until he had successfully renegotiated his loan, and Premier had released its lien on his parents' residence. Premier argues that had Debtor divulged his true intentions, Premier would not have renewed the Note, and would have moved forward with foreclosure of his parents' residence. Debtor argues that he had no duty to disclose his discussions with bankruptcy counsel and that he intended to honor his obligations to Premier under the 2010 Note until one day he determined

---

[2] Transcript from the September 12, 2010 hearing ("TR"), p. 22-23.

that he could not and decided to file for protection under the Bankruptcy Code.  Debtor also

argues that Premier suffered no damages as a result of Debtor's actions because Premier received

a negotiated sum to release the lien and the deed of trust and additional collateral for the renewed

loan.

## II.  DISCHARGEABILITY DISCUSSION AND ANALYSIS

### A. 11 U.S.C § 523(a)(2)(A)

Premier has pleaded an exception to discharge claiming that the debt owed to it should be

nondischargeable as it was incurred as a result of Debtor's false pretenses, false representations

and/or through actual fraud pursuant to § 523(a)(2)(A).

Section 523(a)(2)(A) of the Bankruptcy Code states that:

(a) A discharge under section 727, 1141, 1128(a), 1128(b), or 1328(b) of this title does
not discharge an individual debtor from any debt-
...
> (2) for money, property, services, or an extension, renewal, or refinancing of
> credit, to the extent obtained by,-

>> (A) false pretenses, a false representation, or actual fraud, other than a
>> statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).  Congress did not define the terms used in § 523(a)(2)(A).   However,

the United States Supreme Court recently construed the terms in this section to encompass

common law misrepresentation or actual fraud.  *AT&T Universal Card Services v. Ellingsworth*

*(In re Ellingsworth),* 212 B.R. 326, 333 (Bankr. W.D.Mo. 1997) *(citing  Field v. Mans*, 516 U.S.

59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)).

To prevail under § 523(a)(2)(A) the creditor must prove the following elements:

1) that the debtor made a representation;

2) that at the time the debtor knew the representation was false;

3) that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor;

4) that the creditor justifiably relied on such representation; and

5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

*In re Maurer*, 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000)*; Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P.  8th Cir. 1999) *(citing In re Ophaug*, 827 F.2d 340 (8th Cir. 1987), *as supplemented by Field ,* 516 U.S. at 71).

"A 'false pretense' involves implied misrepresentation or conduct intended to create and foster a false impression." *Moen*, 238 B.R. at 791 *(quoting In re Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988)).  "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression.  This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." *Id. (quoting In re Malcolm*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)).

A debtor's silence regarding a material fact may also constitute a false misrepresentation under § 523(a)(2)(A). *Moen,* 238 B.R, at 791; *see also, e.g., In re Van Horne*, 823 F.2d 1285, 1287-88 (8th Cir. 1987), *rev'd on other grounds*; *In re Larkin*, 189 B.R. 234, 239 (Bankr. D. Mass. 1995); *In re Demarest*, 176 B.R. 917, 920 (Bankr. W.D. Wash. 1995), *aff'd* 124 F.3d 211, (9th Cir. 1997); *In re Jenkins*, 61 B.R. 30, 40 (Bankr. D. N.D. 1986); *In re Maier*, 38 B.R. 231, 233 (Bankr. D. Minn. 1984).  For purposes of section 523(a)(2)(A), a "misrepresentation" denotes "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth."  *In re Melancon*, 223 B.R. 300, 308-09 (Bankr. M.D. La. 1998) (quoting Restatement (Second) of Torts § 525, Comment b (1976)).  In *Van Horne*,

823, F.2d at 1388 (citations omitted), the Eighth Circuit opined that "[a] borrower has the duty to divulge all material facts to the lender ... While it is certainly not practicable to require the debtor to 'bare his soul' before the creditor, the creditor has the right to know those facts touching upon the essence of the transaction."

Preponderance of the evidence is the standard by which a case must be proven to prevail on a claim under § 523(a)(2)(A). *In re Nelson,* 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006)*; see also Moen*, 238 B.R. at 791 (*citing Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).  Exceptions to discharge are normally to be construed narrowly against the creditor and liberally in favor of the debtor, thus effectuating the fresh start policy of the Code. *Van Horne*, 823 F.2d at 1287.  However, "[t]he Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor'." *Moen*, 238 B.R. at 792 (*quoting Cohen v. De La Cruz*, 523 U.S. 213,118, S.Ct. 1212, 1216, (1998)).

Although the Court is persuaded that there is sufficient evidence for it to find that Premier established the first four (4) elements of its § 523(a)(2)(A) claim, because the Court finds that Premier did not establish by a preponderance of the evidence that it was damaged by Debtor's misrepresentations, or in this instance, his failure to divulge facts material to the negotiation of the renewal of the loan, there is no need for the Court to analyze the facts as they relate to each § 523(a)(2)(A) element individually.  In this case, the fraudulent behavior occurred while the Debtor was attempting to renew his loan.  This is not an instance where the Debtor borrowed funds, acted fraudulently, then sought additional funds; in which case the Court would simply

need to analyze the specific damages that resulted after the fraudulent conduct had occurred. *See*

*In re Uptegrove*, 2010 WL 2545786 (Bankr. W.D. Mo.).  Here, the Debtor's loan was already in

place.  After the initial loan was made, Premier never advanced additional funds to Debtor.  It

was during the renewal of the original loan that the fraudulent conduct occurred, which adds

complexity to the analysis of the damages.

The problem for Premier is that it did not prove that it was damaged as a result of

Debtor's conduct.   Prior to Debtor's fraudulent conduct, the evidence is that Debtor owed

Premier $148,372.33.[3]  This amount was secured by:

(1) Debtor's 2002 Cadillac Escalade;

(2) a deed of trust on Debtor's parents' residence; and

(3) an assignment of Debtor's Farmers Insurance Co. contract.

After Debtor's fraudulent conduct, the evidence is that Debtor owed Premier $131,538.87.[4]  This

amount was secured by:

(1) a second deed of trust on Debtor's residence[5];

(2) an assignment of Debtor's life insurance policy with a face value of $150,000; and

(3) an assignment of Debtor's Farmers Insurance Co. contract.

As part of the renewal of the loan, the principal amount due on the loan was reduced by a total of

$25,000 in exchange for Premier's release of the Escalade and the deed of trust that were

pledged as collateral for the original Note.  The parties negotiated $9,000 for Premier's release

---

[3] TR, p. 24, Premier's Exhibit No. 11.

[4] TR, p. 24; Premier's Exhibit No. 12.

[5] The evidence is that Debtor's personal residence was ultimately foreclosed; therefore, the second deed of trust on this property is no longer part of Premier's collateral package.  TR, p. 43.

of its lien against Debtor's Escalade and they negotiated $16,000 for Premier's release of the

deed of trust for Debtor's parents' residence.[6]  So what exactly are Premier's damages after

Debtor's fraudulent conduct?  The Court is not convinced that Premier established any.

There is insufficient evidence in the record to establish that Premier was in a better equity

position when it held the deed of trust on Debtor's parents' residence as compared to when it

took a second deed of trust on Debtor's personal residence.  There is no evidence in the record

regarding the amount of equity Debtor's parents had in their residence and there is no evidence

in the record regarding the amount of the first mortgage on Debtor's residence and no

convincing evidence regarding the equity in Debtor's residence; therefore, the Court cannot

engage in any useful comparison of whether Premier was in a better collateral position with

regard to the real property collateral before or after Debtor's fraudulent conduct.  Additionally,

Premier received $16,000 to release the first deed of trust on Debtor's parents' residence which

would suggest that Premier calculated a sum that it found equitable before it agreed to release the

deed of trust.

Before the fraud,  Premier had a lien on Debtor's Escalade.  After the fraud, Premier did

not have the lien, but it had $9,000 paid against the principal of the loan.   Again, the Court

concludes that Premier must have calculated an amount equal to the value of the collateral or it

would not have released the lien.  Premier's collateral position pre-and post-fraud regarding the

Escalade and the deed of trust on Debtor's parents' residence was changed, but the Court finds

that the evidence does not establish that Premier was damaged by the changes.

Both before and after the fraud Premier received an assignment of Debtor's contract with

---

[6] Tr, p. 22.

Farmers Insurance Company; therefore, Premier's collateral position with respect to this contract was not affected by Debtor's fraud.

Prior to the renewal, Premier did not have an assignment of Debtor's life insurance policy; however, this collateral was pledged on the renewal note as additional collateral.  Even if it had no value, Premier was not harmed by its being pledged.  Moreover, the life insurance policy assignment and the second deed of trust were pledged in place of the Escalade and the first deed of trust that Premier received negotiated sums for.  There is insufficient evidence for the Court to compare the value of the Farmers Insurance Contract, the second deed of trust and the life insurance policy against the collateral package that Premier had before the fraudulent conduct; therefore, Premier has failed to establish that it was damaged.

Citing *In re Oligschlaeger*, 239 B.R. 553 (Bankr. W.D. Mo. 1999), Premier argues that once it has been established that specific money or property has been obtained by fraud, the measure of damages is that "any debt" arising from that fraud is excepted from discharge.  In other words, Premier argues that damages do not need to be limited to the precise amount that was caused by the fraud, but rather, the entire debt should be nondischargeable if there was any fraud involved, regardless of when the fraud took place.  *Oligschlaeger* is distinguishable from this case because the fraud there occurred at the inception of the loan.  *Oligschlaeger*, 239 B.R. at 555.  Once Judge Koger determined that the elements of § 523(a)(2)(A) had been established, determining the amount of the damages was simple, it was the entire amount of the loan. *Id.* *Oligschlaeger* is also distinguishable because in that case there was evidence of damages.  Judge Koger found that the damages that the lender suffered was the inevitability of an adversary filing by the Trustee to declare the recording of the deed of trust void as a post-petition transfer; thus,

eviscerating the lender's secured status. *Oligschlaeger*, 239 B.R. at 558.   There is no evidence in

this case of any post-petition transfers of property of the estate.

   The law in this jurisdiction is clear that only the portion of the debt which results from

the debtor's fraud is nondischargeable.   *See Uptegrove*, *supra*. In *Uptegrove*, the lender

calculated its damages as the entire amount due on the defaulted note, minus the amount that it

credit bid at the foreclosure sale on the property, plus amounts it paid to settle a mechanic's lien,

for a total damages claim of $117,429.  *Uptegrove*, 2010 WL at *4.   The Court, finding that the

debtor had acted fraudulently, limited the lenders damages to $39,677.14, an amount the Court

concluded represented damages that were a direct result of the debtor's fraudulent conduct. *Id*.;

*see also Mercantile Bank of Joplin N.A. v. Nicsinger (In re Nicsinger)*, 136 B.R. 228, 232

(Bankr. W.D. Mo. 1992) (Court limited lender's damages under §523(a)(2)(A) to those that were

a direct and proximate result of the debtor's fraudulent conduct).  Even in *Oligschlaeger*, the

damages were an amount which were a direct and proximate result of the debtor's fraudulent

conduct; the difference in that case was simply that the fraud occurred at the inception of the

loan; therefore, the damage amount was the total amount of the loan.  *Oligschlaeger*, 239 B.R. at

559.

   Premier has failed to establish an amount that it was damaged after Debtor secretly

consulted with a bankruptcy attorney and continued to negotiate renewal of his loan.  On the

contrary, Premier received $25,000 toward the principal of the loan and additional collateral.

The Court concludes that Premier failed to meet its burden by a preponderance of the evidence

that it was damaged by Debtor's decision to seek the advice of bankruptcy counsel while

negotiating the renewal of his loan with Premier without divulging this material fact.

-10-

## B. 11 U.S.C. §523(d)

Debtor seeks attorneys fees under 11 U.S.C. § 523(d).   In order to award attorney's fees under this section, the debtor must prove that (1) the creditor requested a determination of the dischargeability of the debt, (2) the debt is a consumer debt, and (3) the debt was discharged. *FCC Nat. Bank v. Dobbins*, 151 B.R. 509, 511 (Bankr. W.D. Mo. 1002) *citing Chevy Chase Fed. Savings Bank v. Kullgren (In re Kullgren)*, 109 B.R. 949, 953 (Bankr. C.D. Cal. 1990).  Once the debtor establishes these elements, the burden shifts to the creditor to prove that the creditor's action was substantially justified.  *Id. citing Chrysler First Financial Services Corp. v. Rhodes (In re Rhodes)*, 93 B.R. 622, 624 (Bankr. S.D. Ill. 1988).

The element in question is whether Debtor proved that the debt was incurred for a consumer purpose.  Debtor offered no evidence that his debt to Premier was incurred for a consumer purpose.  The only evidence in the record regarding the purpose of the loan was from Premier's loan officer and was that it was a "combination of some business expenses along with taking care of some personal obligations...."[7]   The Court finds that Debtor failed to meet his burden under § 523(d) for an award of attorney's fees.

## V. CONCLUSION AND ORDER

In summary, the Court finds that Premier failed to establish that it was damaged by Debtor's fraudulent conduct; therefore, the Court denies Premier's § 523(a)(2)(A) claim.  The Court further finds that Debtor failed to establish that its debt was for a consumer purpose; therefore, the Court denies his claim attorney's fees under to §523(d).

---

[7] TR, p. 14.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated:    December 3, 2010          /s/ Dennis R. Dow
                                    THE HONORABLE  DENNIS R. DOW
                                    UNITED STATES BANKRUPTCY JUDGE